# EXHIBIT A

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

RODEL BECARES, an individual,

Plaintiff,

v.

LABORATORY CORPORATION OF AMERICA, a Delaware stock corporation; and DOES 1–30, inclusive,

Defendants.

Case No.: 25-CV-2870 TWR (MMP)

**ORDER DENYING MOTION TO COMPEL ARBITRATION**

(ECF No. 6)

Presently before the Court is Defendant Laboratory Corporation of America's Motion to Compel Arbitration and Dismiss or Stay Action Pursuant to 9 U.S.C. §§ 1–16 ("Mot.," ECF No. 6), as well as Plaintiff Rodel Becares' Response in Opposition to ("Opp'n," ECF No. 10), Defendant's Reply in Support of ("Reply," ECF No. 11) the Motion. The Court took the Motion under submission without oral argument pursuant to Civil Local Rule 7.1(d)(1). (*See* ECF No. 12.) Having carefully considered the record, the Parties' arguments, and the relevant law, the Court **DENIES** Defendant's Motion for the following reasons.

/ / /

/ / /

/ / /

1

25-CV-2870 TWR (MMP)

## BACKGROUND[1]

Defendant offered Plaintiff a position as a "[t]echnician" by letter dated April 14, 2005. (*See* ECF No. 10-1 at 10.) The letter indicated that Plaintiff's start date would be April 26, 2005, and that Plaintiff would be "require[d to] . . . sign [Defendant's] Non-Solicitation/Confidentiality Agreement and [Defendant's] Agreement to Arbitrate Employment-Related Disputes documents." (*See id.*) Plaintiff signed the letter, indicating his acceptance of the offer of employment, that same day. (*See id.* at 11.)

On April 26, 2005, Plaintiff's first day of employment with Defendant, he was presented with—and signed—several of agreements, including an Agreement to Arbitrate Employment-Related Disputes, (*see id.* at 12–14 (the "Arbitration Agreement")); a Non-Solicitation/Confidentiality Agreement, (*see id.* at 15–16 (the "Confidentiality Agreement")); a Meal and Rest Obligation Acknowledgment, (*see id.* at 17); an acknowledgment of receipt of an attendance badge, (*see id.* at 18); an acknowledgment of receipt of an access/security card, (*see id.* at 19); a Phone Authorization Receipt Form, (*see id.* at 20); a Laboratory Corporation of American Incorporated Password Security Employment Agreement, (*see id.* at 21); an acknowledgment of receipt of Defendant's Code of Business Practices, (*see id.* at 22); an End-User Security Policy Acknowledgment Form, (*see id.* at 23); and an acknowledgment of receipt of Defendant's Privacy Practices booklet, (*see id.* at 24).

Under the terms of the Arbitration Agreement, "[t]he Employee and Laboratory Corporation of America Holdings and/or its subsidiaries and affiliates (the "Company") agree that, at the option of either party, any allegation, claim, cause of action, demand or dispute (hereafter collectively referred to as a "Dispute"), directly or indirectly related to the Employee's employment with the Company or termination of such employment shall

---

[1] "[I]n deciding a motion to compel arbitration, [the court] may consider the pleadings, documents of uncontested validity, and affidavits submitted by either party." *Macias v. Excel Bldg. Servs. LLC*, 767 F. Supp. 2d 1002, 1007 (N.D. Cal. 2011).

be resolved through impartial binding arbitration." (*See id.* at 12.) The Arbitration Agreement specified that it would apply "to all employment-related Disputes," including "Disputes for . . . wrongful discharge." (*See id.*) The Arbitration Agreement explicitly provided that "this agreement regarding arbitration shall not prevent either party from pursuing equitable or injunctive relief in a judicial forum for any Disputes relating to the enforcement or rights dealing with non-solicitation or no-hire of employees, non-solicitation or disruption of relations with respect to customers or vendors, non-disclosure, non-competition, confidentiality, trade secrets, inventions, patents, copyright, trademarks, service marks or any other matter relating to restrictive covenants or unfair competition." (*See id.* at 13.)

Plaintiff initiated this suit on September 22, 2025, by filing a Complaint for Damages ("Compl.," ECF No. 1-2 at 5–16) against Defendant in the San Diego Superior Court for the County of San Diego alleging five claims: (1) racial discrimination in violation of California's Fair Employment and Housing Act ("FEHA"), Cal. Gov't Code §§ 12900–12996; (2) sexual orientation discrimination in violation of FEHA; (3) wrongful termination in violation of public policy; (4) failure to prevent discrimination; and (5) unfair competition in violation of California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200–17210. Defendant answered on October 22, 2025, (*see* ECF No. 1-2 at 23–36), and removed to this District the following day. (*See* ECF No. 1.) The instant Motion followed on January 6, 2026. (*See generally* ECF No. 6.)

## LEGAL STANDARD

The Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1–16, governs arbitration agreements in any contract affecting interstate commerce, including those found in employment contracts. *See Cir. City Stores, Inc. v. Adams*, 532 U.S. 105, 119, (2001); *see also* 9 U.S.C. § 2. The FAA "provides that 'an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.'" *Fli-Lo Falcon, LLC v. Amazon.com, Inc.*, 97 F.4th 1190,

3

1193 (9th Cir. 2024) (quoting *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011)).

Courts review arbitration agreements in light of the "liberal federal policy favoring arbitration agreements." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25 (1983); *Soto v. Am. Honda Motor Co.*, 946 F. Supp. 2d 949, 953–54 (N.D. Cal. 2012). "If a party ignores its agreement to arbitrate, the other party may ask a court to issue 'an order directing that such arbitration proceed in the manner provided for in such agreement.'" *Fli-Lo Falcon*, 97 F.4th 1190 at 1194 (quoting 9 U.S.C. § 4). Further, "[i]f an agreement exists, the FAA 'leaves no place for the exercise of discretion by a district court, but instead mandates that [it] shall direct the parties to proceed to arbitration.'" *Id.* at 1193 (quoting *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985)).

## ANALYSIS

"Generally, in deciding whether to compel arbitration, a court must determine two 'gateway' issues: (1) whether there is an agreement to arbitrate between the parties; and (2) whether the agreement covers the dispute." *Brennan* 796 F.3d at 1130 (citing *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 84 (2002)). Plaintiff does not dispute that he signed an Arbitration Agreement that covers his dispute with Defendant; rather, he argues that the Arbitration Agreement is not enforceable because it is unconscionable. (*See generally* Opp'n.) Although Defendant disputes unconscionability, it also argues that, even if the agreement is unconscionable, severance is the appropriate remedy. (*See, e.g.*, Reply at 1.)

Here—despite Defendant's arguments to the contrary, (*see, e.g.*, Mot. at 5–6, 12–13)—there can be no serious dispute that the Arbitration Agreement must be read in conjunction with the Confidentiality Agreement[2] and that, as contracts of adhesion, there

---

[2]    *See, e.g.*, *Alberto v. Cambrian Homecare*, 91 Cal. App. 5th 482, 490–91 (2023) ("Here, we have no difficulty concluding that the Arbitration Agreement and the Confidentiality Agreement should be read together. They were executed on the same day. They were both separate aspects of a single primary transaction—[the employee plaintiff]'s hiring. They both governed, ultimately, the same issue—how to

4

exists at least some degree of procedural unconscionability with regard to the Arbitration and Confidentiality Agreements.[3]

As for substantive unconscionability, Plaintiff specifically identifies the following provisions: (1) Section 3 of the Confidentiality Agreement,[4] which provides that Plaintiff consents to Defendant obtaining an injunction—without posting bond—enjoining Plaintiff from violating the Confidentiality Agreement, (*see* Opp'n at 8–10); (2) Section E of the

/ / /

/ / /

/ / /

---

resolve disputes arising between [the employee plaintiff] and [the employer defendant] arising from [the plaintiff employee]'s employment.  Failing to read them together artificially segments the parties' contractual relationship.  Treating them separately fails to account for the overall dispute resolution process the parties agreed upon.").  As in *Alberto*, Plaintiff here signed both the Arbitration Agreement and Confidentiality Agreement on the same date, and both agreement "governed, ultimately, the same issue—how to resolve disputes arising between [Plaintiff] and [Defendant] arising from [Plaintiff]'s employment." *See id.*

[3]  *See, e.g.*, *Ramirez v. Charter Commc'ns, Inc.*, 16 Cal. 5th 478, 493–94 (2024) ("[T]here are degrees of procedural unconscionability.  At one end of the spectrum are contracts that have been freely negotiated by roughly equal parties, in which there is no procedural unconscionability. . . .  Contracts of adhesion that involve surprise or other sharp practices lie on the other end of the spectrum. . . .  Ordinary contracts of adhesion, although they are indispensable facts of modern life that are generally enforced . . . , contain a degree of procedural unconscionability even without any notable surprises, and bear within them the clear danger of oppression and overreaching. . . .  Courts must be particularly attuned to this danger in the employment setting, where economic pressure exerted by employers on all but the most sought-after employees may be particularly acute. . . .  Thus, although adhesion alone generally indicates only a low degree of procedural unconscionability, the potential for overreaching in the employment context warrants close scrutiny of the contract's terms." (second alteration in original; citations and internal quotation marks omitted)).

[4]  Section 3 of the Confidentiality Agreement provides:

> [Defendant] shall be entitled, in addition to any other right and remedy, to an injunction, without the posting of any bond or security, enjoining or restraining [Plaintiff] from any violation or threatened violation of the provisions of paragraph 1 or paragraph 2 of this Agreement[,] and [Plaintiff] hereby consent[s] to the issuance of such Injunction.  This paragraph 3 shall survive the termination of this Agreement.

(*See* Confidentiality Agr. ¶ 3.)

5

Arbitration Agreement,[5] which "compels arbitration of the claims employees are most likely to bring, while exempting from arbitration the claims the employer is most likely to assert," (*see* Opp'n at 10–11); and (3) Section B of the Arbitration Agreement,[6] which "effectively prevents an employee from seeking a representative [California Private Attorney Generals Act ("PAGA")] action, either in court or in arbitration," (*see* Opp'n at 13).   Again, under well-established California law, there can be no serious dispute that these challenged provisions are substantively unconscionable.  *See, e.g.*, *Gurganus v. IGS Sols. LLC*, 115 Cal. App. 5th 327, 336 ("Lack of mutuality exists when an arbitration agreement directs a wide range of claims that would typically be brought by an *employee* into arbitration, but specifically excludes from arbitration claims that would typically be brought by an *employer*, including claims related to intellectual property rights and those for equitable relief related to unfair competition or the disclosure of trade secrets or confidential information." (emphasis in original)), *review denied* (Dec. 30, 2025); *Alberto*,

---

[5]      Section E of the Arbitration Agreement provides:

The parties understand and agree that this agreement regarding arbitration shall not prevent either party from pursuing equitable or injunctive relief in a judicial forum for any Disputes relating to the enforcement or rights dealing with non-solicitation or no-hire of employees, non-solicitation or disruption of relations with respect to customers or vendors, non-disclosure, non-competition, confidentiality, trade secrets, inventions, patents, copyright, trademarks, service marks or any other matter relating to restrictive covenants or unfair competition.  All other remedies, whether related to the application for equitable or injunctive relief or independent thereof, shall be subject to mandatory and binding arbitration in accordance with this Agreement.

(*See* Arb. Agr. ¶ E.)

[6]      Section B of the Arbitration Agreement provides:

The Employee and the Company agree that neither party may pursue an action against the other in a court of law regarding any employment-related Dispute, except for claims involving Workers' Compensation benefits or unemployment benefits. The Employee and the Company further agree that, by executing this Agreement, they are waiving the right to have disputes subject to arbitration under this agreement decided by a jury.

(*See* Arb. Agr. ¶ B.)

25-CV-2870 TWR (MMP)

91 Cal. App. 5th at 492 ("To be sure, provisions that allow employers to seek a preliminary injunction outside of arbitration for breach of a confidentiality agreement are not, by themselves, unconscionable, simply because they primarily benefit employers. . . . But additional provisions that waive the employer's need to obtain a bond before seeking an injunction, waive the employer's need to show irreparable harm, and require an employee to consent to an immediate injunction *are* unconscionable." (emphasis in original; citations omitted)); *id.* at 494 (holding that arbitration provision "provid[ing] that 'no form of class, collective, or representative action' would be maintained without the parties' mutual consent" was a "blanket[] waiver of PAGA claims" that was unconscionable under *Iskanian v. CLS Transportation Los Angeles, LLC*, 59 Cal. 4th 348 (2014), *overruled in part on other grounds by Quach v. California Commerce Club, Inc.*, 16 Cal. 5th 562 (2024), and *abrogated in part on other grounds by Viking River Cruises, Inc. v. Moriana*, 596 U.S. 639 (2022)).

The real question facing the Court, therefore, is whether these unconscionable provisions can be severed or whether the Arbitration Agreement is so "'permeated' by unconscionability" the Court should refuse to enforce the Arbitration Agreement. *See Ramirez*, 16 Cal. 5th at 513. This "inquiry is qualitative and accounts for [several] factor[s]." *See id.* at 516. "At the outset, a court should ask whether 'the central purpose of the contract is tainted with illegality.'" *Id.* "If so, the contract cannot be cured, and the court should refuse to enforce it." *Id.* "If that is not the case, the court should go on to ask first, whether the contract's unconscionability *can* be cured purely through severance or restriction of its terms, or whether reformation by augmentation is necessary." *Id.* (emphasis in original). "If no 'reformation is required,' the offending provision can be severed or limited, and 'the rest of the arbitration agreement left intact,' then severance or restriction is the preferred course for provisions that are collateral to the agreement's main purpose." *Id.* "If the unconscionability cannot be cured by extirpating or limiting the offending provisions, but instead requires augmentation to cure the unconscionability, then the court should refuse to enforce the contract." *Id.*

"Even if a contract *can* be cured, the court should also ask whether the unconscionability *should* be cured through severance or restriction because the interests of justice would be furthered by such actions." *Id.* (emphasis in original). "This part of the inquiry focuses on whether mere severance of the unconscionable terms would function to condone an illegal scheme and whether the defects in the agreement indicate that the stronger party engaged in a systematic effort to impose arbitration on the weaker party not simply as an alternative to litigation, but to secure a forum that works to the stronger party's advantage." *Id.* at 516–17. "If the answer to either question is yes, the court should refuse to enforce the agreement." *Id.* at 517.

"In conducting this analysis, the court may also consider the deterrent effect of each option." *Id.* "Although there are no bright-line numerical rules regarding severance, it is fair to say that the greater the number of unconscionable provisions a contract contains the less likely it is that severance will be the appropriate remedy." *Id.* Ultimately, "courts may liberally sever any unconscionable portion of a contract and enforce the rest when: the illegality is collateral to the contract's main purpose; it is possible to cure the illegality by means of severance; *and* enforcing the balance of the contract would be in the interests of justice." *Id.* (emphasis in original).

Plaintiff relies primarily on *Alberto*, 91 Cal. App. 5th 482, and *Gurganus*, 115 Cal. App. 5th 327, neither of which provides much analysis of severability, much less of the factors enumerated in *Ramirez*. In *Alberto*, a former employee brought wage-and-hour claims against her former employer. *See* 91 Cal. App. 5th at 485, 487. Reading the arbitration agreement in conjunction with the confidentiality agreement and confidentiality addendum that had all been signed together on the employee's first day, the trial court concluded that three provisions were unconscionable: (1) a provision in the confidentiality agreement and addendum allowing the former employer "to obtain injunctive relief in a court to remedy a violation of [the employer]'s confidentiality interests, without the need to post a bond or demonstrate irreparable injury, even as [the employee]'s claims against [the employer] were relegated to arbitration[;]" (2) "the Confidentiality Agreement's

8

25-CV-2870 TWR (MMP)

prohibition on discussing salary information[;]" and (3) "the [arbitration] agreement's wholesale waiver of PAGA claims[.]" *Id.* at 488. As a result, "[t]he trial court found the entire agreement to arbitrate 'permeat[ed]' by unconscionability, meaning that the unconscionable provisions could not be severed and the remainder of the Arbitration Agreement enforced." *See id.* (second alteration in original). Concluding that the trial court had properly found the three provisions highly substantively unconscionable under California law, *see id.* at 492–95, and that the trial court had not abused its discretion in declining to sever the unconscionable terms, *see id.* at 495–96, the California Court of Appeal affirmed. *See id.* at 486, 496.

In *Gurganus*, a former employee sued her former employer for disability discrimination, retaliation in violation of the California Fair Employment and Housing Act and the California Family Rights Act ("CFRA"), failure to engage in the interactive process, failure to provide reasonable accommodations, interference with CFRA rights, wrongful termination, and unfair business practices in violation of California's Unfair Competition Law. *See* 115 Cal. App. 5th at 332. About five months into her employment, she signed several documents, including an arbitration agreement, a dispute resolution policy, and a confidentiality agreement. *See id.* at 330. The former employer moved to compel arbitration. *See id.* at 332. The trial court concluded that there was a high degree of substantive unconscionability because the arbitration agreement and confidentiality agreement "together had the 'net effect' of destroying the mutuality of arbitration, because they required [the employee]'s claims to go to arbitration while permitting many of [the employer]'s potential claims to go to court" and "the confidentiality provision restricted employees from contacting or interviewing potential witnesses outside of the formal discovery process." *See id.* at 333. Having decided not to sever the unconscionable provisions, the trial court denied the employer's motion to compel arbitration. *See id.* 333–34. The Court of Appeal concluded that the trial court had not erred in determining that the two provisions at issue were substantively unconscionable, *see id.* at 336–39, and

///

that the trial court had not abused its discretion by declining to sever the unconscionable terms. *See id.* at 340.

For its part, Defendant relies chiefly on *Wise v. Tesla Motors, Inc.*, which was previously published at 117 Cal. App. 5th 325.[7]  In *Wise*, a former employee sued her former employer for disability discrimination, failure to accommodate, failure to engage in the interactive process, retaliation, failure to prevent discrimination and retaliation, and wrongful termination in violation of public policy. *See id.* at 331.  The former employer moved to compel arbitration, and the former employer argued that two provisions of the parties' non-disclosure agreement—specifically, provisions allowing the former employer to seek injunctive relief without posting a bond and requiring an employee to prove by clear and convincing evidence that information deemed proprietary under the non-disclosure agreement was in the public domain—tainted the arbitration agreement, preventing its enforcement. *See id.* at 332.  The trial court denied the former employer's motion, concluding that two provisions at issue had a "high degree of substantive unconscionability" and that the arbitration agreement was "permeated by unconscionability," rendering severance inappropriate. *See id.* at 332–33.

Assuming that the provisions at issue were unconscionable, the Court of Appeal reversed, concluding that the provisions did not permeate the arbitration agreement and were therefore severable. *See id.* at 338–43.  In its analysis of the *Ramirez* factors, the court first noted that "[t]he main purpose of the Arbitration Agreement [wa]s to require the arbitration of nearly all disputes between the parties[,]" and that "[t]he illegality of the bond waiver and burden of proof provisions [were] collateral to that purpose." *See Wise*, 117 Cal. App. 5th at 339.  Not only did the former employee fail to address the second factor,

---

[7]  On April 1, 2026—after briefing on Defendant's Motion closed and the Court took Defendant's Motion under submission—the California Supreme Court denied review of *Wise* and ordered the Court of Appeal's opinion depublished.  Although this renders *Wise* uncitable, *see* Cal. R. Ct. 8.1115(a)–(b), it also "is not an expression of the court's opinion of the correctness of the result of the decision or of any law stated in the opinion." *See* Cal. R. Ct. 8.1125(d).

25-CV-2870 TWR (MMP)

but the court reasoned that "severance of the [non-disclosure agreement] provisions [wa]s plainly viable without reformation or augmentation of the Arbitration Agreement[]" because "those provisions were not included in the Arbitration Agreement in the first place." *See id.* at 340. As for the final factor, the court asked "whether, at the time of the trial court's ruling, the interests of justice required severance of the allegedly unconscionable terms so that the parties' agreement to arbitrate c[ould] be enforced[,]" which "necessarily turn[ed] on how the allegedly illegal scheme or systematic effort might affect the arbitration of the parties' claims and the mutuality of the arbitration forum generally." *See id.* The court explained that "there was no unconscionable term in the arbitration provisions themselves[]" and that "any [illegal] scheme did not secure a forum (arbitration) that worked to [the employer]'s advantage." *See id.* The non-disclosure agreement "provisions d[id] not apply exclusively to the arbitration[,]" but rather "to all proceedings, including court proceedings seeking injunctive relief pending the arbitration." *See id.* "More importantly, the provisions d[id] not apply at all to [the employee]'s causes of action." *Id.* "Mindful of the strong legislative and judicial preference . . . to sever the offending term and enforce the balance of the agreement, the existence of severance clauses in the Arbitration Agreement and the [non-disclosure agreement], and the burden on [the employee] to show that the Arbitration Agreement should not be enforced . . . , [the court] conclude[d] that the interests of justice necessarily favor[ed] severance." *Id.* at 340–41 (first alteration in original; internal quotation marks omitted). Because all three factors favored severance, the court concluded that the unconscionable provisions in the non-disclosure agreement should have been severed that that the arbitration agreement should have been enforced. *See id.* at 341.

Although neither *Gurganus* nor *Alberto* are models of clarity—particularly where it comes to application of the *Ramirez* factors—they are more analogous to the agreements at issue here than those in *Wise*. In *Wise*, none of the unconscionable provisions appeared in the arbitration agreement itself but rather only in the non-disclosure agreement. Here, by contrast, Plaintiff identifies two provisions within the Arbitration Agreement itself that

are unconscionable, namely, the provisions that (1) specifically require Plaintiff to arbitrate claims more likely to be brought by an employee such as himself and that carve out from arbitration several claims that are much more likely to be brought by Defendant, and (2) that essentially waive Plaintiff's ability to assert PAGA claims.  It is worth noting that neither of these provisions directly implicates the claims that Plaintiff asserts here, but it does evidence a lack of mutuality that permeates the purposes of the agreements.

Even if this did not render the "central purpose of the contract . . . tainted with illegality" such that severance is not available, *see Ramirez*, 16 Cal. 5th at 516, the Court questions whether "the unconscionability *should* be cured through severance or restriction because the interests of justice would be furthered by such actions."  *Id.* (emphasis in original).  This appears to be a situation in which Defendant, as "the stronger party[,] engaged in a systematic effort to impose arbitration on the weaker party not simply as an alternative to litigation, but to secure a forum that works to the stronger party's advantage." *See id.* at 516–17.  Of course, this may—at least in part—simply be because the agreements at issue are incredibly outdated:  Plaintiff signed them on April 26, 2005, and the law concerning arbitration and non-compete provisions has changed significantly over the last two decades.  But the Court should not incentivize employers such as Defendant to seek the protection of stale agreements rendered unlawful by intervening changes in substantive law in the hopes that courts will save them through severance.  The Court therefore **DECLINES** to sever the unconscionable provisions and **DENIES** Defendant's Motion to compel arbitration on the grounds that the Arbitration Agreement is unenforceable.

## CONCLUSION

In light of the foregoing, the Court **DENIES** Defendant's Motion to compel Plaintiff to arbitration.  If Defendant declines to file an appeal of this Order under 9 U.S.C. § 16(a)(1), the Parties **SHALL CONTACT** the chambers of the Honorable Michelle M.

/ / /

/ / /

12

25-CV-2870 TWR (MMP)

Pettit so that she may reset the Early Neutral Evaluation and Case Management Conference that were vacated during the pendency of the Motion. (*See* ECF No. 9.)

**IT IS SO ORDERED.**

Dated: May 15, 2026

Honorable Todd W. Robinson
United States District Judge

25-CV-2870 TWR (MMP)